Justin T. Goodwin (SBN 278721)
  jgoodwin@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone:  (213) 335-6999
Facsimile:   (213) 335-7802

Richard J. Millett (SBN 337902)
  rmillett@dtolaw.com
DTO LAW
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (415) 630-4100
Facsimile:  (415) 630-4105

Attorneys for Defendant
GOYA FOODS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYREE SEPIAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOYA FOODS, INC.,<br><br>Defendant. | Case No. 2:25-cv-01512-CAS-E<br>Hon. Christina A. Snyder<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GOYA FOODS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:     July 14, 2025<br>Time:    10:00 a.m.<br>Crtrm.:  8D |

1006978

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................. 1

II.    RELEVANT FACTUAL ALLEGATIONS ..................................... 2

    A.    Goya and Its Products ................................................ 2

    B.    Alleged Misrepresentation .......................................... 3

    C.    Plaintiff's Lone Purchase and Other Distinct Products ......... 3

III.   LEGAL STANDARDS ......................................................... 4

    A.    Fed. R. Civ. P. 12(b)(6) ............................................ 4

    B.    Fed. R. Civ. P. 9(b) ................................................ 4

    C.    Fed. R. Civ. P. 12(b)(1) ............................................ 5

IV.    ARGUMENT ................................................................... 5

    A.    The Complaint Should Be Dismissed as to the Hundreds of Unique Products Listed in Exhibit B, Which Plaintiff Did Not Buy or Address with Factual Allegations in her Complaint. ......... 5

        1.    Plaintiff's allegations—or lack thereof—about the Exhibit B products do not satisfy *Twombly's* plausibility standard, much less the heightened requirements of Rule 9(b). ......... 6

        2.    Plaintiff has not alleged standing as to the Exhibit B products. ..................................................... 7

        3.    Alternatively, the Court should strike Exhibit B under Rule 12(f). ........................................................ 9

    B.    Plaintiffs' False Advertising Claims (Counts 1 & 3) Must Be Dismissed Because No Reasonable Consumer Would Be Deceived by the Labels on the Five Products Referenced in the Body of the Complaint. ................................................ 10

        1.    The vast majority of consumers would not see the "Product of USA" fine print on the back label. ................ 11

        2.    A reasonable consumer who did see the "Product of USA" fine print would not have understood it to mean that plantains, cassava, or other foreign ingredients were grown in the U.S. ..................................................... 13

        3.    Plaintiff does not plausibly allege a violation of Section 17533.7 of the Business and Professions Code or 16 C.F.R. § 323. ..................................................... 15

C.    Plaintiff's UCL, Misrepresentation, Breach-of-Warranty, and
Unjust Enrichment Claims Fail for the Same Reasons..........................17

D.    Plaintiff Lacks Standing to Seek Injunctive Relief Because She
Does Not Plausibly Allege that She Could be Misled in the
Future. ...............................................................................................19

V.    CONCLUSION ...........................................................................................20

MEM. P. & A. ISO DEF. GOYA FOODS, INC.'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... 4, 5, 12

*Banks v. R.C. Bigelow, Inc.*,
    2024 WL 3330554 (C.D. Cal. July 8, 2024) ...................................... 16

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ........................................................... 19, 20

*Bauman v. Australian Gold, LLC*,
    2019 WL 2329885 (S.D. Cal. May 31, 2019) ...................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................... 4, 5, 6, 7

*Collyer v. Catalina Snacks Inc.*,
    2024 WL 202976 (N.D. Cal. Jan. 18, 2024) ...................................... 11

*Cordes v. Boulder Brands USA, Inc.*,
    2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ...................................... 8

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ........................................................... 19, 20

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ..................................................... 4, 10, 12

*F.D.I.C. v. Munoz*,
    2011 WL 4357186 (C.D. Cal. Sept. 19, 2011) ................................. 9, 10

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ....................................................... 9, 10

*Figy v. Frito-Lay N. Am., Inc.*,
    67 F. Supp. 3d 1075 ............................................................................ 7

*Fitzpatrick v. Tyson Foods, Inc.*,
    2016 WL 5395955 (E.D. Cal. Sept. 27, 2016) ................................. 17

*Freeman v. Time, Inc.*,
  69 F.3d 285 (9th Cir. 1995) ................................................................. 11

*Gamez v. Summit*,
  2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) ..................................... 7

*Grivas v. Metagenics, Inc.*,
  2018 WL 6185978 (C.D. Cal. Mar. 19, 2018) ....................................... 7

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................... 12

*Hass v. Citizens of Humanity, LLC*,
  2016 WL 7097870 (S.D. Cal. Dec. 6, 2016) ........................................ 17

*Hernandez v. Radio Sys. Corp.*,
  2023 WL 4291829 (C.D. Cal. May 10, 2023) ........................................ 8

*In re Honda Idle Stop Litig.*,
  694 F. Supp. 3d 1293 (C.D. Cal. 2023) ................................................. 5

*Hood v. Handi-Foil Corp.*,
  2024 WL 4008711 (N.D. Cal. Aug. 29, 2024) .................................... 17

*Joslin v. Clif Bar & Co.*,
  2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ................................ 19, 20

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................. 4, 5, 7, 17

*Krystofiak v. BellRing Brands, Inc.*,
  737 F. Supp. 3d 782 (N.D. Cal. 2024) ................................................. 18

*La Barbera v. Ole Mexican Foods Inc.*,
  2023 WL 4162348 (C.D. Cal. May 18, 2023) ................................. 11, 14

*Lee v. Nature's Path Food, Inc.*,
  2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) ........................................ 18

*Maeda v. Kennedy Endeavors, Inc.*,
  407 F. Supp. 3d 953 (D. Haw. 2019) ................................................... 14

*Moates v. Facebook Inc.*,
  2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) ........................................ 18

*Mollicone v. Universal Handicraft, Inc.*,
    2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ........................................................ 8

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ............................................... 10, 13, 14, 15

*Prescott v. Saraya USA, Inc.*,
    2023 WL 6120610 (S.D. Cal. Sept. 18, 2023) .................................... 18

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (Cal. Ct. App. 2020) ..................................... 18

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ............................................................ 9

*Skinner v. Ken's Foods, Inc.*,
    53 Cal. App. 5th 938 (2020) ........................................................... 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................... 19

*Stewart v. Kodiak Cakes, LLC*,
    2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) .................................... 20

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................... 5, 7

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) ......................................................... 10

*Wilkerson v. Butler*,
    229 F.R.D. 166 (E.D. Cal. 2005) ....................................................... 9

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................... 11

*Zakaria v. Gerber Prods. Co.*,
    2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ................................... 12

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................. 17

Cal. Bus. & Prof. Code § 17533.7 ...................................... 15, 16, 17, 18

Cal. Bus. & Prof. Code § 17533.7(a)................................................................16

Cal. Bus. & Prof. Code § 17533.7(b)–(c)(1) .............................................6, 16

**Other Authorities**

16 C.F.R. § 323 ...................................................................................................15

16 C.F.R. § 323.2 ................................................................................................16

Fed. R. Civ. P. 8(a) ............................................................................................17

Fed. R. Civ. P. 9(b) .....................................................................................*passim*

Fed. R. Civ. P. 12(b)(1) .......................................................................................5

Fed. R. Civ. P. 12(b)(6) .......................................................................................4

Fed. R. Civ. P. 12(f) .............................................................................................9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

In a typical false advertising case, a plaintiff alleges that a producer deceptively markets a product by prominently displaying a false or misleading representation on the front of the label.  If possible, the defendant may attempt to counter those allegations by arguing that the front-label representation is ambiguous and pointing to some disclosure on the back label that resolves the ambiguity.

But this is no typical false advertising case.  Plaintiff Nyree Sepian alleges that Defendant Goya Foods, Inc., a leading U.S. based seller of Latin American food and beverage products, dupes its customers into believing that those products—including ones with self-described "tropical" ingredients like Yuca Cassava Chips and Plantain Chips—only contain ingredients sourced from within the United States. How does Goya perpetrate this purported fraud?  By printing the words "Product of USA" in tiny font on a remote part of the *back* label, far from the nutrition facts, ingredient list, and promotional language.

This lone representation, when considered in context, cannot support Plaintiff's claims.  For one, it is unlikely that any consumer, much less a significant portion of the consuming public, would even notice this inconspicuous, fine print on the back label before buying the product.  One could easily miss it when viewing the images reproduced in Plaintiff's own Complaint if she hadn't highlighted the text with bolded black and yellow boxes.

Nor does Plaintiff plausibly allege that the rare consumer who *does* notice the "Product of USA" fine print, if acting reasonably, would interpret it as meaning that tropical ingredients like plantains and cassava were grown in the United States.  On the contrary, the overall context of the packaging, from the Spanish-language slogans to the emphasis on tropical ingredients traditionally grown in Latin America, conveys the opposite impression.  In this context, where the product does not claim to contain "100% U.S. Ingredients," the "Product of USA" fine print is far

1  more reasonably understood to refer to the country where the ingredients came

2  together and the products underwent final processing and packaging.

3      Not only has Plaintiff failed to state a claim based on the lone product she

4  purchased, Goya's Yuca Cassava Chips, she improperly attempts to bootstrap her

5  individual claim into a putative class action involving more than a ***thousand*** distinct

6  Goya products listed in Exhibit B to the Complaint.  The Complaint must be

7  dismissed as to those products because it does not contain a shred of factual support

8  for any cause of action.  Plaintiff's *only* factual allegation about the Exhibit B

9  products—which range from canned seafood to frozen pastries to butter—is that

10  they all make an unspecified U.S. origin claim that may differ from the "Product of

11  the USA" claim.  She provides no detail about those products' packaging,

12  ingredients, or labeling, thus failing to meet even the most basic pleading

13  requirements, much less satisfy the heightened requirements under Rule 9(b).

14      For these reasons and the others set forth below, the Complaint must be

15  dismissed in its entirety.

16        **II.    RELEVANT FACTUAL ALLEGATIONS**

17  **A.    Goya and Its Products**

18      "Goya is a leading U.S. based food company that specializes in Latino

19  cuisine."  Compl. ¶ 18.  Since 1936, Goya's advertising has centered its brand image

20  as a purveyor of food products from Latin America, and its packaging often employs

21  Spanish-language descriptions and other marketing.  *See id.* ¶¶ 18, 35.  As just one

22  example, the lid of its Sofrito Cooking Base reads, "Si es Goya, tiene que ser

23  bueno!" / "If it's Goya, it has to be good!"  *Id.* ¶ 35.  The packaging also frequently

24  contains graphics and other advertising copy highlighting exotic ingredients

25  originating in Latin America, like plantains (e.g., "They Look Like Bananas, but

26  They're Not!") and cassava ("You may know this tropical root as cassava, manioc,

27  or even tapioca, but whatever name you prefer, you'll agree they make amazingly

28  delicious chips!").  *Id.*  Goya allegedly "sells its products on its website, third party

websites [like] Amazon [and] Amigofoods.com as well as retail and grocery stores such as Target, Walmart, Vallarta Supermarkets and elsewhere." *Id.* ¶ 18.

**B.    Alleged Misrepresentation**

Plaintiff's claims revolve around Defendant's representation that certain of its products are "Product[s] of USA." *See, e.g.*, Compl. ¶ 21.  As to each product identified in the Complaint, the "Product of USA" representation appears in a single location—in fine print at the bottom of the back label of the product, far from the Nutrition Facts and list of ingredients. *Id.* ¶ 35.  Adjacent to the "Product of USA" representation, in a font of near-identical size, the back label also informs consumers that the products are "Distributed by © GOYA Foods, Inc., Jersey City, NJ 07307." *Id.*  The back labels also include a list of the products' ingredients. *Id.*  Nowhere does the label claim that the product contains "100% U.S. Ingredients."

Plaintiff alleges that the "Product of USA" representation is false or misleading because the products "contain foreign ingredients and are wholly or partially made of and/or manufactured with foreign materials," like cassava, plantains, turmeric, and cumin. *Id.* ¶¶ 42–48.  To support this contention, Plaintiff cites data from the Food and Agriculture Organization of the United Nations, which allegedly show that these ingredients are "not produced in commercial quantities in the United States." *Id.* fns. 3–7.

**C.    Plaintiff's Lone Purchase and Other Distinct Products**

Plaintiff alleges that, "[o]n or about January 25, 2024," she purchased Goya's Yuca Cassava Chips from Amazon. *Id.* ¶¶ 43, 54, 58.  According to Plaintiff, she saw the "Product of USA" fine print on the back-label image of the Yuca Cassava Chips. *See id.* ¶ 57.  Having seen this fine print and "desiring to purchase a product that was made in the United States with ingredients from the United States," Plaintiff claims to have relied on the "Product of USA" representation in deciding to purchase the Yuca Cassava Chips. *Id.* ¶¶ 58–59.

In the Complaint, Plaintiff identifies four other Goya products allegedly bearing the back-label "Product of USA" fine print and containing "foreign" ingredients—Plantain Chips Original, Adobo seasoning, Sazonador Total seasoning, and Sofrito cooking sauce. *See id.* ¶¶ 35, 44–48. Plaintiff also purports to bring claims related to more than one thousand other Goya products—including beans cider, desserts, cooking oils, olives, meats, and seafood—she references in Exhibit B to the Complaint. *See id.* ¶ 8, Exh. B. The Complaint provides no allegations regarding the existence, size, or location of any "Product of USA" representation on these products, nor does it identify the products' ingredients, whether foreign-sourced or otherwise. *See generally id.*

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether the Complaint passes muster, the Court must conduct a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense." *Id.* at 679; *accord Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). Although this Court must accept factual allegations in the Complaint as true, it need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### B.    Fed. R. Civ. P. 9(b)

Claims sounding in fraud are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Rule 9(b)'s heightened pleading standard governs not only claims where

fraud is an essential element of the cause of action, but also any claim whose basis is an allegedly "unified course of fraudulent conduct," including those brought under the CLRA, UCL, and FAL. *Kearns*, 567 F.3d at 1125 (citing *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). Plaintiff's false advertising claims here are governed by Rule 9(b). *See, e.g.*, Compl. ¶ 26 (alleging Goya "falsely, unfairly, and deceptively advertised, marketed and sold the Class Products, including the Product purchased by Plaintiff, as being 'Product[s] of [the] USA' without clear and adequate qualification"); *id.* ¶ 9 (alleging that "Defendant's conduct of advertising and selling deceptively labeled products" violates the CLRA, UCL, FAL, and constitutes breach of warranty, unjust enrichment, negligent misrepresentation, and intentional misrepresentation).

## C.    Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1), a defendant may also seek dismissal of any "claim for relief" based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal subject matter jurisdiction does not exist where a plaintiff lacks Article III standing, meaning a judicially redressable "injury in fact" caused by the defendant. *E.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "In the context of a [Rule] 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims." *In re Honda Idle Stop Litig.*, 694 F. Supp. 3d 1293, 1299 (C.D. Cal. 2023) (citation omitted). "Moreover, the standards set forth in [*Twombly*] and [*Iqbal*] apply with equal force to Article III standing when it is being challenged on the face of the complaint." *Id.* (citations omitted).

## IV.    ARGUMENT

### A.    The Complaint Should Be Dismissed as to the Hundreds of Unique Products Listed in Exhibit B, Which Plaintiff Did Not Buy or Address with Factual Allegations in her Complaint.

Plaintiff failed to meet her pleading burden as to more than a ***thousand*** distinct products about which she did not include a single concrete factual allegation in her Complaint. She alleges that she purchased one Goya product: the Yuca

Cassava Chips.  Compl. ¶ 7.  The body of her Complaint references just four other products—Plantain Chips, Sofrito Cooking Sauce, Adobo, and Sazonador Total—which she alleges contain "foreign-made" ingredients and exhibit the "Product of USA" text on their back labels.  *Id.* ¶¶ 44–48.  Yet she provides a "non exhaustive list" of more than a thousand additional "Class Products" in Exhibit B to the Complaint.  Compl. ¶ 8 & Exh. B.  She does not provide the actual name of any such product.  Nor does she explain why she believes the products are deceptively advertised.  For multiple, independent reasons, Plaintiff's claims as to the products listed in Exhibit B must be dismissed.

> **1.    Plaintiff's allegations—or lack thereof—about the Exhibit B products do not satisfy *Twombly*'s plausibility standard, much less the heightened requirements of Rule 9(b).**

To state any claim for relief, a complaint must provide enough factual detail to push the claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  But the ***only*** allegation concerning the more than one thousand products referenced in Exhibit B is that they all display an unspecified "U.S. origin claim" that may differ from the "Product of the USA" representation.  Compl. ¶ 8.  Plaintiff does not explain why she believes the unspecified U.S. origin claims are misleading.  She does not explain where the claims appear on the packaging or what other representations appear on the label.  She does not identify products' ingredients or the country from which any ingredient is sourced.  She does not allege whether the ingredients cannot be sourced from the United States or that any such ingredient comprises more than ten percent[1] of the product.  For these reasons, regarding the hundreds of products referenced in Exhibit B, Plaintiff fails to satisfy

---

[1] As discussed in greater detail below, section 17533.7(c)(1) of the California Business and Professions Code permits the use of unqualified U.S. origin claims about products with processed foreign ingredients that "constitute not more than 10 percent of the final wholesale value of the manufactured product" and cannot be obtained "from a domestic source."  *See* Section IV.B.3., *infra*.

the plausibility standard under *Twombly*. Furthermore, Plaintiff comes nowhere close to satisfying Rule 9(b)'s requirement that she "state with particularity the circumstances constituting the fraud." *Kearns*, 567 F.3d at 1126 (quoting Fed. R. Civ. P. 9(b)) (affirming dismissal of false-advertising claims under Rule 9(b) for failing to articulate "what the television advertisements or other sales material [at issue] specifically stated").

> **2.      Plaintiff has not alleged standing as to the Exhibit B products.**

Even if Plaintiff had otherwise plausibly alleged a cause of action regarding the products listed in Exhibit B (which she hasn't), she has not alleged facts sufficient to demonstrate her standing to bring any such claims. To satisfy Article III's standing requirement, a plaintiff must have suffered an injury in fact that is concrete and particularized as well as actual and imminent. *TransUnion*, 594 U.S. at 423. And to have statutory standing under the UCL, FAL, and CLRA, a plaintiff must also allege she suffered an economic injury due to the defendant's conduct. *See Grivas v. Metagenics, Inc.*, 2018 WL 6185978, at *4 (C.D. Cal. Mar. 19, 2018).

District Courts in the Ninth Circuit have split over whether a named plaintiff in a putative class action has standing to bring claims for unpurchased products. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082–83 (N.D. Cal. 2014) (identifying diverging approaches). But "the prevailing view . . . is to allow class action plaintiffs to bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar." *Gamez v. Summit*, 2022 WL 17886027, at *6 (C.D. Cal. Oct. 24, 2022) (quoting *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1011 (S.D. Cal. 2021)); *see also Clevenger v. Welch Foods Inc.*, 501 F. Supp. 3d 875, 881 (C.D. Cal. 2020)).

Plaintiff will likely argue that courts following the prevailing view often "postpone[] the inquiry into whether the products and misrepresentations are substantially similar until the class certification stage, where the court 'will have to gauge the typicality of [the plaintiff's] claims and [the plaintiff's] ability to

adequately represent the interests of the proposed class[].'" *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *5 (C.D. Cal. Oct. 17, 2018) (quoting *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014)).  She will likely add that this Court follows the prevailing view and has held, as a general matter, that "[w]hether the products plaintiff did not purchase are substantially similar to those that she did purchase is a fact-intensive inquiry that is not appropriate at [the pleadings] stage." *Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *8 (C.D. Cal. Jan. 30, 2017) (Snyder, J.).

But that argument would miss the mark here.  Even those courts inclined to postpone this inquiry until the class-certification stage still require plaintiffs to adequately *plead* substantial similarity in the first instance.  *See Cordes*, 2018 WL 6714323, at *2 (dismissing for failure to do so); *see also Hernandez v. Radio Sys. Corp.*, 2023 WL 4291829, at *11 (C.D. Cal. May 10, 2023); *Bauman v. Australian Gold, LLC*, 2019 WL 2329885, at *2 (S.D. Cal. May 31, 2019).  Indeed, when this Court has postponed similar standing inquiries until class certification, it has done so based on the premise that "plaintiff ha[d] pleaded with sufficient particularity that the products she did not purchase [were] substantially similar to those that she did purchase, such that plaintiff satisfies the heightened pleading requirement imposed for claims sounding in fraud." *Mollicone*, 2017 WL 440257, at *9.

Plaintiff has not done so here.  She has not pleaded *any* facts, much less sufficient or particularized ones, establishing that the hundreds of products identified in Exhibit B are substantially similar to the product she purchased.  *See Hernandez*, 2023 WL 4291829, at *11 ("[T]he Court would have been inclined to postpone the inquiry had Plaintiff included . . . sufficient factual allegations to confer standing upon Plaintiff to pursue claims for Products he did not purchase."); *Cordes*, 2018 WL 6714323, at *2 (same); *Bauman*, 2019 WL 2329885, at *3 (same).  On the contrary, the Complaint's vague descriptions of the listed products (i.e., the only information available)—including canned beans, cocktail mixers,

coconut milk, dealcoholized wine, tropical sodas, jelly, coconut products, rice puddings, corn, chorizo sausage, seafood, empanadas, churros, other beverages and desserts, frozen foods, oils,  etc.—give rise to the opposite inference: the vast majority of these products are *dissimilar* to Yuca Cassava Chips, the only product Plaintiff actually purchased.  Whether the Cassava chips' packaging is misleading because cassava is not grown in the U.S. has no bearing whatsoever on, for example, whether Goya has falsely advertised six unspecified "corn" products.  *See* Exh. B.

For these reasons, Plaintiff has not carried her burden at this stage.  To hold otherwise would be to invite abuse of the "substantial similarity" standard and subject class-action defendants to costly and wide-ranging discovery regarding a potentially limitless number of products based on the most conclusory of allegations.  The Court should decline to do so here.

### 3.    Alternatively, the Court should strike Exhibit B under Rule 12(f).

Alternatively, the Court should strike Exhibit B from the Complaint pursuant to Rule 12(f).  The Court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Such matters include those that lack an "essential or important relationship to the [plaintiff's] claim for relief," are "[s]uperfluous" in nature, are "neither responsive nor relevant," are needlessly repetitive, or constitute a "statement of unnecessary particulars." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  The purpose of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)), *overruled on other grounds*, 510 U.S. 517 (1994).  To that end, a "court can also grant a motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case." *F.D.I.C. v. Munoz*, 2011 WL 4357186, at *1 (C.D. Cal. Sept. 19, 2011) (citing *Fantasy*, 984 F.2d at 1528).

As noted, Exhibit B lists more than a thousand products without providing any of the factual details necessary to state a claim.  In fact, the only inference that can be drawn from Exhibit B is that the referenced products bear no meaningful resemblance to the Yuca Cassava Chips purchased by Plaintiff.  Exhibit B is thus superfluous to the "real issues in [this] case" and should be stricken.  *Id.* at *1; *cf. Fantasy*, 984 F.2d at 1528 (affirming order striking irrelevant allegations, in part because "the stricken allegations would have unnecessarily complicated" the case).

**B.    Plaintiffs' False Advertising Claims (Counts 1 & 3) Must Be Dismissed Because No Reasonable Consumer Would Be Deceived by the Labels on the Five Products Referenced in the Body of the Complaint.**

Plaintiff's false-advertising claims under the CLRA and False Advertising Law fail because a significant portion of consumers would not, viewing the packaging as a whole, believe that foreign ingredients like cassava and plantains were grown in the United States.  The "reasonable consumer" standard "requires a plaintiff to show that members of the public are likely to be deceived by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (citation and internal quotation marks omitted); *see also Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 948 (2020) (similar).  "This is not a negligible burden," *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021), and two aspects of the standard are particularly relevant here.  First, it is not enough that a product's packaging "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  "Rather, the reasonable consumer standard requires a probability 'that *a significant portion of the general consuming public or of targeted consumers*, acting reasonably in the circumstances, could be misled.'"  *Id.* (emphasis added) (quoting *Lavie*, 105 Cal. App. 4th at 508).

Second, any specific representation must be considered within the broader context, including the packaging as a whole.  *See, e.g., Moore*, 4 F.4th at 882–85

10

(applying the "general principle" that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used"); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (finding no deception when sweepstakes mailer examined "as a whole"); *Collyer v. Catalina Snacks Inc.*, 2024 WL 202976, at *4–5 (N.D. Cal. Jan. 18, 2024) (evaluating deception requires examining "the full context of the labels"). Thus, a plaintiff's "selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim." *La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *8 (C.D. Cal. May 18, 2023) (citation omitted).

Here, the full context of Goya's labels and general consumer knowledge permit only one conclusion: there is not a significant portion of consumers who, acting reasonably, would read the labels to mean that all ingredients in the products were grown in the United States.

### 1. The vast majority of consumers would not see the "Product of USA" fine print on the back label.

As a threshold matter, the reasonable consumer could not have been misled by the challenged "Product of USA" fine print because she would not have seen it in the first place. The ordinary assumption in false advertising law is that "reasonable consumers" should *not* "be expected to look" at "small print" on the side or back of a label unless there is a reason to do so. *E.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Here, the challenged language not only appears in tiny print; it is buried at the bottom of the back label, far from the Nutrition Facts and ingredients list, nearly indistinguishable from the fine print surrounding it. Compl. ¶ 35. Indeed, Plaintiff felt the need to highlight the "Product of USA" language with bold rectangles, apparently assuming the reader of her Complaint would otherwise miss it:

1
2
3
4
5
6
7
8
9
10
11
12



13    It defies common sense that a "significant portion of the general consuming

14    public" would notice these words, much less be misled by them, before buying the

15    products. *Ebner*, 838 F.3d at 965 (citation omitted); *see also Iqbal*, 556 U.S. at 679

16    (requiring courts "to draw on [] judicial experience and common sense" in

17    determining whether a complaint states a plausible claim for relief); *cf. Hadley v.*

18    *Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1100 (N.D. Cal. 2018) (holding at class

19    certification that certain "phrase on Nutri-Grain packaging was not sufficiently

20    'prominently displayed' to warrant an inference of class-wide exposure" where it

21    "only appeared (1) on the back panel of the Nutri-Grain packaging; (2) 'in small

22    font'; and (3) in the middle of a block of text" (citation omitted)); *Zakaria v. Gerber*

23    *Prods. Co.*, 2016 WL 6662723, at *8 (C.D. Cal. Mar. 23, 2016) ("As these labels

24    show, the alleged misrepresentations were not prominently displayed," so "it cannot

25    be inferred that there is a 'high likelihood that in the process of buying the product,

26    the consumer would have seen the misleading statement on the product[.]" (citation

27    omitted)).  Plaintiff's consumer protection claims should be dismissed for this

28    reason alone.

**2.    A reasonable consumer who did see the "Product of USA" fine print would not have understood it to mean that plantains, cassava, or other foreign ingredients were grown in the U.S.**

What's more, a reasonable consumer who *did* read the fine print on the back label before buying one of the products would not have been misled by the words "Product of USA."  Notably, the product does not claim to contain "100% U.S. ingredients."  Rather, Plaintiffs' false-advertising claims hinge on the theory that a significant portion of reasonable consumers would see the "Product of USA" fine print and believe it to mean not that the final product was manufactured in the U.S. by a U.S. company, but that every ingredient in the product originated here.  Yet Plaintiff fails to allege any facts giving rise to such an inference.  Nor could she, as the inference is not supported by the products' packaging or broader context.  A reasonable consumer would not, for instance, believe that Yuca Cassava Chips are made from cassava—which the label describes as a "tropical root," Compl. ¶ 35— grown in the United States.

In many respects, this case resembles *Moore v. Trader Joe's*, where the Ninth Circuit held that a *front*-label advertisement describing a product as "100% New Zealand Manuka Honey" would not mislead a reasonable consumer into believing the honey was made solely from the nectar of Manuka flowers.  4 F.4th at 885.  In so holding, the Ninth Circuit concluded there was no deception "as a matter of law" because "other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that [the product] was derived from 100% Manuka flower nectar."  *Id.* at 882.  The Ninth Circuit pointed to "key contextual inferences from the product itself."  *Id.* at 883. "First and foremost, given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source."  *Id.*  The Ninth Circuit thus "imagines a 'reasonable consumer who is intelligent, someone capable of analyzing different pieces of information, engaging in logical reasoning, and drawing 'contextual inferences' from a product and its

1   packaging." *La Barbera*, 2023 WL 4162348, at *10 (quoting *Moore*, 4 F.4th at

2   882).

3         The reasonable consumer described in *Moore* would not be deceived here,

4   where key contextual inferences from the products' packaging show that Goya is not

5   marketing the products as containing only U.S. ingredients.  In fact, quite the

6   opposite.  First, the labels' most prominent advertising elements—from the product

7   names (e.g., "Sazonador" and "Sofrito") to the descriptions (e.g., "the authentic

8   Spanish cooking sauce") to the suggested uses (e.g., "Great for Dipping in Salsas

9   and Guacamole")—communicate to consumers that Goya's products are *Latin*

10  *American* food products.  *See* Compl. ¶ 35.  The Latin American theme is further

11  emphasized by Spanish-language descriptions and slogans, ingredient lists, and

12  other advertising copy.  *See id.* ¶ 35 (e.g., "Sofrito Goya, como hecho en casa!").

13  Second, the packaging describes certain exotic ingredients like plantains that

14  consumers may not frequently encounter in the United States: "They Look Like

15  Bananas, but They're Not!" *Id.* ¶ 35; *see also id.* ("You may know this tropical root

16  as cassava, manioc, or even tapioca . . . .").

17        If reasonable consumers "know that it is impossible to produce honey that is

18  derived exclusively from a single floral source," *Moore*, 4 F.4th at 883, then they

19  certainly know that exotic ingredients like cassava, plantains, and turmeric are

20  cultivated in tropical regions like those covering large parts of Latin America.  The

21  packaging of the Yuca Cassava Chips even describes cassava as a "tropical root."

22  Compl. ¶ 35.  Plaintiff's assertion that *reasonable* consumers would believe these

23  tropical ingredients were grown in the U.S. simply because of the "Product of USA"

24  fine print on the back label flies in the face of this prevailing understanding and

25  common sense.  *See Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 970

26  (D. Haw. 2019) (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304

27  (2011)) ("The reasonable consumer test does not contemplate a particularly naïve

28  consumer[,]" nor is the standard a "least sophisticated consumer[.]").  This is

because "a reasonable consumer would not understand [the] label here as promising something that is impossible to find"—namely, snacks made with U.S.-sourced cassava or plantains. *Moore*, 4 F.4th at 883–84 (citing *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (finding no deception because "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables")).

The packaging does, however, support a different inference: that the final processing or distribution of the products occurred in the United States. Indeed, on each of the five products described in the body of the Complaint, the "Product of USA" fine print appears not alongside the ingredient list but as part of, or directly adjacent to, a disclosure that the product is "Distributed by: © GOYA Foods, Inc. / Jersey City, NJ 07307" or "Secaucus, NJ 07096." *See* Compl. ¶ 35 (images). The rare consumer who even saw the "Product of USA" fine print would make the logical assumption that the final processing and distribution occurred in the United States, not that each and every tropical ingredient was grown here.

Because a reasonable consumer would not be deceived by the packaging, Plaintiffs' CLRA and FAL claims must be dismissed.

### 3. Plaintiff does not plausibly allege a violation of Section 17533.7 of the Business and Professions Code or 16 C.F.R. § 323.

Plaintiff cannot salvage her claims by arguing that Goya's use of the words "Product of USA" violated section 17533.7 of the California Business and Professions Code or 16 C.F.R. § 323 (the "MUSA Rule"). As discussed above, her false-advertising claims, which require some degree of deception, fail because she has not plausibly alleged that reasonable consumers would be misled by the packaging. A violation of section 17533.7 or the MUSA Rule would not make it any more plausible that a consumer believed, for example, that the plantains in Goya's plantain chips were grown in the U.S. In any event, Plaintiff has not plausibly alleged that Goya *violated* section 17533.7 or the MUSA rule.

Section 17533.7 prohibits a "Made in U.S.A." claim only if a product "or any article, unit, or part thereof, has been entirely or substantially *made, manufactured, or produced* outside the United States."  Cal. Bus. & Prof. Code § 17533.7(a) (emphasis added).  The words "made, manufactured, or produced," which are "largely interchangeable" in this context, mean "something made from raw materials by hand or machinery" and "describe[] the physical process of transforming raw materials into goods."  *Banks v. R.C. Bigelow, Inc.*, 2024 WL 3330554, at *4 (C.D. Cal. July 8, 2024) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 685 (2006)).  "Thus, one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States even though using *raw materials* acquired from a foreign source."  *Id.* (quoting *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1272 (2007)).

In addition to exempting foreign-sourced raw materials, Section 17533.7 also permits U.S. origin claims when foreign-manufactured articles, units, or parts constitute either (1) "not more than *5 percent* of the final wholesale value of the manufactured product," or (2) "not more than *10 percent* of the final wholesale value of the manufactured product" and cannot be obtained "from a domestic source."  Cal. Bus. & Prof. Code § 17533.7(b)–(c)(1) (emphasis added).

Similarly, the FTC has articulated certain exceptions to the MUSA Rule, 16 C.F.R. § 323.2.  For instance, a product can make an unqualified U.S.-origin claim if its foreign-sourced ingredients are "far removed" from the finished product.  *See* Enforcement Policy Statement on U.S. Origin Claims § IV & IV.C.[2]  And when a product contains *raw* materials that are "inherently unavailable" in the United States, the FTC permits U.S. origin claims unless the raw materials are "the whole or essence of the finished product."  *See id.*, fn. 19.

---

[2] *Available at* https://www.ftc.gov/legal-library/browse/enforcement-policy-statement-us-origin-claims.

1    Here, the Complaint is utterly devoid of factual allegations establishing that

2   Goya's products violate these requirements.  Were foreign-sourced ingredients

3   imported raw or "made, manufactured, or produced" outside the United States?  The

4   Complaint does not say.  Does the amount of foreign-sourced black pepper in

5   Goya's Sofrito cooking sauce exceed ten percent of the final wholesale value of the

6   product?  The Complaint does not say this either.  Does cumin makeup the whole or

7   essence of any product?  Another question left unanswered.  Plaintiff has thus failed

8   to plausibly allege a violation of Section 17533.7 or the MUSA Rule under Rule

9   8(a), and she certainly has not met Rule 9(b)'s heightened pleading requirements.[3]

10
11   **C.    Plaintiff's UCL, Misrepresentation, Breach-of-Warranty, and Unjust Enrichment Claims Fail for the Same Reasons.**

12    Plaintiff's failure to plausibly allege any deception or a violation of section

13   17533.7 or the MUSA Rule also dooms her UCL claim.  To plead a claim under the

14   UCL, Plaintiff had to allege with particularity that Goya engaged in a business

15   practice that was (1) "unlawful," (2) "unfair," or (3) "fraudulent," or (4) that

16   constituted "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof.

17   Code § 17200; *see also Kearns*, 567 F.3d at 1125 (UCL claims sounding in fraud

18   must be pleaded with particularity).  While Plaintiff invokes each prong separately,

19   Compl. ¶¶ 126–61, they all are grounded in the same two allegations: that the

20

21   [3] *See Fitzpatrick v. Tyson Foods, Inc.*, 2016 WL 5395955, at *4–5 (E.D. Cal. Sept.

22   27, 2016) (dismissing Section 17533.7,  CLRA, and UCL claims where complaint
      did "not include any allegations regarding the percentage of foreign sourced

23   materials contained in [the defendant's] products"); *Hood v. Handi-Foil Corp.*,
      2024 WL 4008711, at *2 (N.D. Cal. Aug. 29, 2024) (dismissing complaint where

24   it "consist[ed] of no factual averments to suggest that Defendant's products fall
      outside of Section 17533.7(c)(1)'s safe harbors"); *Hass v. Citizens of Humanity,*

25   *LLC*, 2016 WL 7097870, at *4 (S.D. Cal. Dec. 6, 2016) (dismissing complaint

26   where "Plaintiff's allegations fail[ed] to raise a plausible inference that Defendant
      has violated amended § 17533.7, much less [met] the particularity requirements of

27   Rule 9(b) for claims sounding in fraud").

28

1    "Product of USA" language on the back labels is deceptive, and that the language

2    violates Section 17533.7 and the MUSA Rule.  But Plaintiff has failed to plead

3    deceptive advertising or a regulatory violation.  Where, as here, "the same alleged

4    conduct" or legal violations underpin Plaintiff's allegations with respect to each

5    prong, courts routinely hold that failure to plead false advertising renders all prongs

6    of the UCL "insufficiently pleaded."  *Krystofiak v. Bellring Brands, Inc.*, 737 F.

7    Supp. 3d 782, 801 (N.D. Cal. 2024) (dismissing claims under unfair and unlawful

8    prongs of UCL grounded in same conduct as dismissed fraudulent prong claim).[4]

9          Plaintiffs' intentional and negligent misrepresentation, breach of express

10   warranty, and unjust enrichment claims, which also hinge on the same unified

11   course of alleged conduct, fail for the same reason.  *See, e.g.*, *Krystofiak*, 737 F.

12   Supp. 3d at 801–806 (holding that the same deficiencies that defeated the false-

13   advertising claims also defeated the UCL, intentional misrepresentation, and

14   negligent misrepresentation claims); *Lee v. Nature's Path Food, Inc.*, 2023 WL

15   7434963, at *4–5 (S.D. Cal. Nov. 9, 2023) (dismissing intentional and negligent

16   misrepresentation claims together with consumer protection claims due to the

17   implausibility of the plaintiff's "[t]heory of fraud" and failure to plead "any

18   actionable misrepresentation"); *Prescott v. Saraya USA, Inc.*, 2023 WL 6120610, at

19   *4 (S.D. Cal. Sept. 18, 2023) (dismissing "claims of common law fraud, intentional

20   misrepresentation, negligent misrepresentation, and unjust enrichment [because they

21   were] based on the same deficient allegations of deception as those" underlying

22   consumer protection claims).

23

---

24   [4] *See also, e.g.*, *Moates v. Facebook Inc.*, 2024 WL 2853976, at *3 (N.D. Cal. Apr.
     3, 2024) (dismissal of claim under unfair prong of UCL warranted when this claim

25   is based on the same conduct as dismissed claims under fraudulent and unlawful
     prongs); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (Cal. Ct.

26   App. 2020) (when grounded in same conduct, plaintiff's burden under fraudulent

27   prong of UCL "is the same" as under the FAL).

28

**D.    Plaintiff Lacks Standing to Seek Injunctive Relief Because She Does Not Plausibly Allege that She Could be Misled in the Future.**

Plaintiff lacks standing to pursue injunctive relief because her knowledge that plantains, cassava, and other ingredients are not grown in the United States in commercial quantities precludes any possibility that she will be misled by the challenged representations in the future.  Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).  "A plaintiff must demonstrate constitutional standing separately for each form of relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  When the requested relief is an injunction, the plaintiff must demonstrate that she "has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted).  The likelihood of further harm requires "a 'real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

As relevant here, the case law reveals two broad categories of deceptive-labeling allegations.  The *first* involves allegations rendering it plausible that the plaintiff will reasonably be deceived by a challenged representation in the future despite her knowledge that the representation is currently misleading.  In *Davidson*, for example, the plaintiff alleged that hygienic wipes advertised as "flushable" could not be flushed.  Although a "close question," the plaintiff sufficiently alleged a plausible threat of future harm because she might buy the wipes in the future believing the problem was fixed and the new wipes are flushable.  *Id.* at 971–72.

The *second* category involves allegations in which the plaintiff's knowledge about the product renders it implausible that she will be deceived by the challenged representations in the future.  *See, e.g.*, *Joslin v. Clif Bar & Co.*, 2019 WL 5690632,

at *4 (N.D. Cal. Aug. 26, 2019) ("[A] plaintiff's knowledge of the truth forecloses the risk of future harm."); *Stewart v. Kodiak Cakes, LLC*, 2021 WL 1698695, at *9 (S.D. Cal. Apr. 29, 2021) ("Plaintiffs do not establish Article III standing to assert their claim for injunctive relief based on their [slack fill] theory . . . because they can simply "cross-check their previous disappointing purchases by examining the undisputed net weight on the face of Defendant's product[.]"); *id.* at *10 (finding it implausible plaintiff would be misled by certain representations ("no preservatives" and "healthy") in the future because she "can check the nutrition facts or ingredient labeling to assess if the products still contain preservatives; artificial additives; unhealthy levels of fat, cholesterol, sugar, and vitamins; or insufficient protein").

Plaintiff's allegations here plainly fall into the second category. Despite what she may have believed when she bought the product, she now knows that the cassava, plantains, and other challenged ingredients "are not produced in commercial quantities in the United States." Compl. ¶¶ 43–46, nn. 3–7. She does *not* allege that Goya should begin sourcing these ingredients from the United States, or even that it could do so. Rather, she alleges merely that the packaging should make clear that these ingredients come from outside the U.S.—again, something she already knows. In other words, unlike the flushable wipes in *Davidson*, there is no reason to expect the composition of the product here to change. It is thus implausible, to say the least, that Plaintiff would once again buy Goya's cassava chips believing the cassava had been grown in the United States. Because she has not plausibly alleged "a real and immediate threat of repeated injury," *Bates*, 511 F.3d at 985, she lacks standing under Article III to seek injunctive relief, *see, e.g.*, *Joslin*, 2019 WL 5690632, at *4 (dismissing claim for injunctive relief where the "plaintiff's knowledge of the truth foreclose[d] the risk of future harm").

## V.    CONCLUSION

For the foregoing reasons, and because amendment would be futile, the Complaint should be dismissed in its entirety and with prejudice.

Dated:  June 11, 2025

Respectfully submitted,

DTO LAW


By:  */s/ Justin T. Goodwin*

Justin T. Goodwin

Attorneys for Defendant
GOYA FOODS, INC.

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Goya Foods, Inc., certifies that this Memorandum contains 6,662 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  June 11, 2025                    DTO LAW


                                         By:  */s/ Justin T. Goodwin*
                                              Justin T. Goodwin

                                              Attorneys for Defendant
                                              GOYA FOODS, INC.